IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

SCOTT M. EDMONDS,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0131

RULING ON JUDICIAL REVIEW

_____

TABLE OF CONTENTS

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III. FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    *A. Edmonds' Education and Employment Background* . . . . . . . . . . . . . 4
    *B. Vocational Expert's Testimony from the Administrative Hearing* . . . . . 4
    *C. Edmonds' Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*IV.  CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *A. ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . . . 11
    *B. Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *1.   Taylor-Hillyer's and Dr. Safdar's Opinions* . . . . . . . . . . . 13
        *2.   Dr. Meyer and Dr. Uran's Opinions* . . . . . . . . . . . . . . . 17
        *3.   Consultative Examination* . . . . . . . . . . . . . . . . . . . . . 20
    *C. Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*V.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VI.  ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Scott M. Edmonds on November 21, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Edmonds asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Edmonds requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.

2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III. FACTS

### A. Edmonds' Education and Employment Background

Edmonds was born in 1966. He did not graduate from high school, but later earned a GED. After earning his GED, Edmonds attended community college for truck driving. He has a commercial driving license. Edmonds' past relevant work includes being a merchandise deliverer, laborer, cab driver, forklift truck operator, and truck driver.

### B. Vocational Expert's Testimony from the Administrative Hearing

At the administrative hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is:

> capable of performing medium work . . . who can . . . occasional[ly] climb, balance, stoop, kneel, crouch and crawl; can perform short simple instructions; and should have no more than occasional interaction with [] supervisors.

(Administrative Record at 69-70.) The vocational expert testified that under such limitations, Edmonds could perform his past work as a merchandise deliverer. The ALJ provided the vocational expert with a second hypothetical for an individual who is:

> limited to light work . . . who has the same limitations otherwise; and, in addition can have only brief and superficial interaction with the public and with co-workers.

(Administrative Record at 70.) The vocational expert testified that under such limitations, Edmonds could perform the following jobs: (1) laundry folder (800 positions in Iowa and 86,000 positions in the nation), (2) routing clerk (800 positions in Iowa and 75,000

positions in the nation), and (3) small products assembler (4,300 positions in Iowa and 227,000 positions in the nation). The ALJ asked the vocational expert a third hypothetical which was identical to the second hypothetical, except that the individual would be limited to sedentary work. Under that set of limitations, the vocational expert testified that Edmonds could perform the following sedentary jobs: (1) addresser (300 positions in Iowa and 25,000 positions in the nation), (2) final assembler (600 positions in Iowa and 29,000 positions in the nation), and (3) touch-up screener (200 positions in Iowa and 14,000 positions in the nation). Lastly, the ALJ asked the vocational expert to "assume then for any of the hypotheticals that I've given you so far that the person . . . would be absent from work one day a week. Would that preclude anyone?"[1] The vocational expert responded "[y]es, if an individual is absent one day a week that would preclude competitive employment."[2]

### C. Edmonds' Medical History

On July 16, 2010, Edmonds met with Dr. Omar Eslao, M.D., for a psychiatric evaluation. Dr. Eslao noted that Edmonds' chief complaints were depression and anxiety. Edmonds' depressive symptoms included: decreased appetite, poor sleep, decreased energy, guilty feelings, and anhedonia. With regard to Edmonds' anxiety, Dr. Eslao opined that:

> [Edmonds] did admit to worrying a lot. The worry, however, appears related to worrying about losing control or getting angry and being out of control. The anxiety appears to be more of a problem regulating his emotions rather than actual anxiety. For example, he states that when he gets angry at someone, he has a hard time letting go of the anger.

---

[1] Administrative Record at 72.

[2] *Id.* at 73.

5

(Administrative Record at 293.) Dr. Eslao also noted that Edmonds experiences elevated episodes lasting 3 to 4 days. Such episodes are characterized by increased energy, decreased need for sleep, being in a happy mood, talking more, and an increase in goal-directed activities. Edmonds also has racing thoughts during these episodes. At times, the episodes are also associated with auditory hallucinations. In discussing the auditory hallucinations, Dr. Eslao found that:

> When asked to describe these voices, [Edmonds] stated that these voices sound like people telling him he is going to die and that people are going after him. He states that he first started hearing these voices eight months ago and that they occur mostly at night. In terms of other psychotic symptoms, he also states that he sometimes feels that the radio is talking to him. At this time, we are unable to rule out the effects of a substance since [Edmonds] admits to smoking marijuana on a daily basis.

(Administrative Record at 293.) Lastly, Dr. Eslao indicated that Edmonds may suffer from PTSD due to sexual abuse by his father from the age of 5 until he was 13. Upon examination, Dr. Eslao diagnosed Edmonds with bipolar disorder, PTSD, and nondependent cannabis abuse. Dr. Eslao recommended individual therapy and medication as treatment.

On October 4, 2010, Edmonds met with Dr. Martin Meyer, Ph.D., and Dr. Julie Uran, Ph.D., for a psychological evaluation. In discussing his difficulties with depression, Edmonds reported to Drs. Meyer and Uran that his:

> Depressive phases include depressed mood most of the day, loss of pleasure or interest in most activities, and significant weight fluctuation as well as difficulty falling asleep. He also reports fatigue or loss of energy, feelings of worthlessness or inappropriate guilt, and diminished ability to think, concentrate or make decisions. . . . Manic episodes of Bipolar Disorder occur more frequently and are without euphoria. Symptoms related to anger involving excessive talking, a lot of racing thoughts or ideas and difficulty paying attention.

(Administrative Record at 297.) Edmonds also reported difficulties with occasional auditory hallucinations, anxiety, and nightmares involving past sexual abuse as a child. Upon testing and examination, Drs. Meyer and Uran diagnosed Edmonds with bipolar disorder, intermittent explosive disorder, panic disorder with agoraphobia, cannabis abuse in partial remission, adult anti-social behavior, alcohol dependence in remission, polysubstance abuse in remission, and personality disorder. Drs. Meyer and Uran determined that Edmonds had the following functional limitations: poor coping skills, overwhelming depression, overwhelming anxiety, poor social skills, difficulty sustaining focus, and recurrent suicide attempts. Drs. Meyer and Uran opined that Edmonds' "current mental status is rated as poor, with poor prognosis for higher levels of personality integration."[3] Drs. Meyer and Uran concluded that:

> Within a vocational environment, [Edmonds] would have difficulty involving interacting with others as well as sustaining focus and motivation. Additionally, there is evidence of overwhelming depression and anxiety as well as lability in mood.

(Administrative Record at 301.)

On October 20, 2010, Dr. Douglas Schiller, Ph.D., reviewed Edmonds' medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Edmonds.[4] On the Psychiatric Review Technique assessment, Dr. Schiller diagnosed

---

[3] Administrative Record at 301.

[4] Interestingly, five days later, on October 25, 2010, Dr. Schiller provided DDS with a Psychiatric Review Technique assessment for Edmonds, but not a second mental RFC assessment. *See* Administrative Record at 328-340. On the October 25 Psychiatric Review Technique assessment, Dr. Schiller diagnosed Edmonds only with a history of depression. *Id.* at 331. Dr. Schiller determined that Edmonds had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining

(continued...)

Edmonds with bipolar disorder and PTSD. Dr. Schiller determined that Edmonds had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Schiller determined that Edmonds was moderately limited in his ability to: maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. Dr. Schiller concluded that:

> [Edmonds] is able to carry out very short and simple instructions. There are no restrictions in his abilities in regards to basic understanding and memory. . . .

> [Edmonds] appears to be able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments.

(Administrative Record at 306.)

On October 21, 2010, Edmonds was referred to Dr. John Nesbitt, M.D., for a disability examination. Dr. Nesbitt noted that Edmonds' main problems were respiratory and orthopaedic in nature. Upon examination, Dr. Nesbitt diagnosed Edmonds with chronic obstructive pulmonary disease aggravated by cigarette smoking, right hip orthopaedic difficulties, and bipolar disorder by history. Dr. Nesbitt opined that Edmonds could: (1) occasionally lift 50 pounds and frequently lift 25 pounds; (2) occasionally carry 25 pounds and frequently carry 20 pounds; (3) stand or walk 6 hours in an eight-hour

---

[4](...continued)
social functioning, and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 338. There is no explanation for the discrepancy in findings between the two Psychiatric Review Technique assessments, or any reason given for making these two significantly different assessments 5 days apart.

workday; and (4) occasionally kneel, stoop, crouch, balance, and climb, but frequently bend. Dr. Nesbitt found no limitations in Edmonds' ability to sit or reach. Dr. Nesbitt also found no environmental restrictions for Edmonds.

On November 13, 2010, Dr. Charlene Ellis reviewed Edmonds' medical records and provided DDS with a physical RFC assessment for Edmonds. Dr. Ellis determined that Edmonds could: (1) occasionally lift and/or carry 50 pounds, (2) frequently lift and/or carry 25 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Ellis also determined that Edmonds could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Ellis found no manipulative, visual, communicative, or environmental limitations.

On January 12, 2012, Edmonds was referred to Tamara Taylor-Hillyer, LISW, for mental health counseling. At his initial appointment, Taylor-Hillyer noted that Edmonds had recently returned to Cedar Rapids, Iowa, from living in Pennsylvania. Edmonds reported that he has difficulties with anger, depression, and paranoia. In reviewing Edmonds' medical history, Taylor-Hillyer noted:

> On a scale of 1 to 10 for depression, [Edmonds] rates himself as a 2. He indicates that he has very poor sleep. He is sleeping about 2 hours a night for the last month. Prior to that, he had been getting about 4 to 5 hours per night. He experiences fatigue, worthlessness, and poor concentration. He says that he does not struggle with suicidal thoughts very frequently or very intensely. He does struggle with different depressed mood, paranoia, and anger. He does report episodes of significantly decreased need for sleep and where he is more talkative than usual and racing thoughts are frequent for him. His past episode occurred about 3 months ago he says. He believes that the depression started in childhood. He suffered physical, emotional, and sexual abuse by his biological father at age 5 to 13. He experiences panic attacks

> daily for the last 3 months. He says that he has had panic
> attacks since childhood.

(Administrative Record at 382.) Edmonds also described difficulties with PTSD, social phobia, anxiety, and auditory hallucinations. Upon examination, Taylor-Hillyer diagnosed Edmonds with schizoaffective disorder, anxiety disorder, PTSD, borderline personality disorder, history of polysubstance dependence in full sustained remission, and cannabis dependence in early full remission. Taylor-Hillyer recommended therapy and counseling as treatment.

On February 3, 2012, Edmonds was referred by Taylor-Hillyer to Dr. Ali Safdar, M.D., for medication management. Edmonds' chief complaints were mood swings, irritability, and depression. Upon examination, Dr. Safdar diagnosed Edmonds with mood disorder, PTSD, and personality disorder. Dr. Safdar recommended medication as treatment.

On February 24, 2012, Taylor-Hillyer filled out a "Medical Source Statement" for Edmonds.[5] Edmonds was diagnosed with schizoaffective disorder, anxiety, PTSD, and history of borderline personality disorder. Taylor-Hillyer and Dr. Safdar opined that Edmonds had "marked" restrictions in remembering locations and work-like procedures, understanding and remembering very short and simple instructions, and understanding and remembering detailed instructions. Taylor-Hillyer and Dr. Safdar further opined that Edmonds had "marked" restrictions in the ability to: carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and

_____

[5] On March 12, 2012, Dr. Safdar signed off on Taylor-Hillyer's findings. *See* Administrative Record at 361. Additionally, on the statement signed by Taylor-Hillyer, she dated it February 24, 2011. Both parties agree that this date is clearly a typographical error, as Taylor-Hillyer did not start treating Edmonds until January 2012. *See* Edmonds' Brief (docket number 12) at 14, n.8; *see also* Commissioner's Brief (docket number 13) at 7, n.3.

be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, make simple work-related decisions, and complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods. Next, Taylor-Hillyer and Dr. Safdar found that Edmonds had "marked" restrictions in the ability to interact appropriately with the general public and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Taylor-Hillyer and Dr. Safdar opined that Edmonds had "extreme" restrictions in the ability to accept instructions and respond appropriately to criticism from supervisors. Lastly, Taylor-Hillyer and Dr. Safdar opined that Edmonds had "marked" restrictions in the ability to: respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. Taylor-Hillyer and Dr. Safdar concluded that "this is a permanent condition" for Edmonds.[6]

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Edmonds is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from

---

[6] Administrative Record at 355.

> performing past relevant work, and (5) whether the
> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at

590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet

the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)

(citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to

show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v.

Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812,

815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to

the Commissioner to demonstrate that the claimant retains the residual functional capacity

("RFC") to perform a significant number of other jobs in the national economy that are

consistent with claimant's impairments and vocational factors such as age, education, and

work experience. *Id*. The RFC is the most an individual can do despite the combined

effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is

'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant

evidence, including medical records, observations of treating physicians and others, and

[the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting

*Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Edmonds had not

engaged in substantial gainful activity since September 30, 2009. At the second step, the

ALJ concluded from the medical evidence that Edmonds had the following severe

impairments: bipolar affective disorder, intermittent explosive disorder, PTSD,

personality disorder, and a history of polysubstance abuse. At the third step, the ALJ

found that Edmonds did not have an impairment or combination of impairments listed in

20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Edmonds' RFC as follows:

> [Edmonds] has the residual functional capacity to perform medium work . . . except: he may only occasionally balance, stoop, kneel, crouch, crawl, or climb. Additionally, he is limited to tasks involving short, simple instructions, and he can have no more than occasional interaction with supervisors, as well as only brief, superficial contact with the public and co-workers.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Edmonds could perform his past relevant work as a merchandise deliverer. Therefore, the ALJ concluded that Edmonds was not disabled.

### B. Objections Raised By Claimant

Edmonds argues that the ALJ erred in three respects. First, Edmonds argues that the ALJ failed to properly evaluate the opinions of Tamara Taylor-Hillyer and Dr. Safdar, both treating sources. Second, Edmonds argues that the ALJ failed to properly evaluate the opinions of Dr. Meyer and Dr. Uran, both examining sources. Lastly, Edmonds argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative psychological evaluation.

### 1. Taylor-Hillyer's and Dr. Safdar's Opinions

Edmonds argues that the ALJ failed to properly evaluate the opinions of Taylor-Hillyer and Dr. Safdar. Specifically, Edmonds argues that:

> In this case, the Administrative Record includes a statement of work-related limitations signed by Dr. Ali Safdar, [Edmonds'] psychiatrist, and prepared and signed by his therapist, Tamara Taylor-Hillyer. The ALJ failed to acknowledge Dr. Safdar adopted Taylor-Hillyer's opinions. As such, the ALJ failed to apply the correct legal standard in evaluating these opinions.

Edmonds' Brief (docket number 12) at 13. Edmonds maintains that the ALJ "should have considered the statement of work-related limitations to be from Dr. Safdar."[7] In the alternative, Edmonds asserts that Taylor-Hillyer should have been considered part of his treatment team, thereby requiring the ALJ to apply the treating medical source standard in his consideration of Taylor-Hillyer and Dr. Safdar's opinions. Edmonds concludes that:

> The ALJ erred as a matter of law. The ALJ considered Hillyer-Taylor's limitations to be from a therapist, not from an acceptable medical source. Had the ALJ applied the law correctly, the ALJ would have considered these limitations to be from [an] acceptable medical source, either as limitations from Dr. Safdar or from Hillyer-Taylor as a member of the treatment team. Either way, this error requires remand.

Edmonds' Brief (docket number 12) at 16.

The Commissioner responds to Edmonds' argument as follows:

> The ALJ gave the opinion of Ms. Taylor-Hillyer "little weight" because it was inconsistent with [Edmonds'] function report and activities of daily living, and because the social worker had seen [Edmonds] only a few times. [Edmonds] is correct that the opinion of a treating psychiatrist is analyzed differently under the regulations than the opinion of a treating social worker. . . . However, "an appropriate finding of inconsistency with other evidence alone is sufficient to discount [an] opinion," even of a treating psychiatrist. *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005). Further, as the ALJ noted, prior to providing the opinion in the record, Ms. Taylor-Hillyer had seen plaintiff on only three occasions. Prior to signing a copy of the record, Dr. Safdar had treated [Edmonds] on one 15-minute occasion. . . . The ALJ also discredited the opinion because the indication of certain marked limitations was inconsistent with [Edmonds'] ability to perform home repairs, and . . . play video games. . . . Thus, the ALJ articulated proper bases for giving the opinion "little weight" regardless of whether the opinion was attributed to a

_____

[7] Edmonds' Brief (docket number 12) at 13.

14

> treating social worker or psychiatrist who had examined [him]
> on only one occasion.

Commissioner's Brief (docket number 13) at 14-15. The Court agrees with the Commissioner that regardless of whether Taylor-Hillyer's opinion is treated as the opinion of a treating social worker or treating psychiatrist, the ALJ properly explained his reasons for giving the opinion "little weight." Nevertheless, in analyzing the ALJ's consideration of Taylor-Hillyer and Dr. Safdar's opinions, the Court will apply the treating physician standard.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id*..); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed Taylor-Hillyer's and Dr. Safdar's opinions as follows:

> Likewise, the undersigned gives little weight to the assessment of [Edmonds'] current therapist, Tamara Taylor-Hillyer, LISW. She maintains that [Edmonds] is markedly limited in every aspect of concentration and persistence, understanding and memory, and adaptation. This includes the ability to carry out very short and simple instructions. As noted in the hearing, his mother acknowledged [Edmonds] uses the internet to play games, suggestive of at least some ability to perform simple tasks as instructed. When considered with the fact

> Ms. Taylor-Hillyer has seen [Edmonds] only five times, this inconsistency leads the undersigned to find she limited [Edmonds] his true functionality. As such, her opinions carry little weight.

(Administrative Record at 22.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Taylor-Hillyer and Dr. Safdar. The Court finds it significant that at the time she offered her opinion which contained virtually all marked and extreme limitations, Taylor-Hillyer had only met with Edmonds three times, less than the five times indicated by the ALJ in his decision.[8] Furthermore, at the time Dr. Safdar adopted Taylor-Hillyer's opinions, he had only met with Edmonds on one occasion.[9] Moreover, in reviewing all four of these treatment notes, the Court finds little evidence to support the plethora of "marked" and "extreme" limitations found in the medical source statement. Therefore, the Court finds the ALJ provided "good reasons" for rejecting these opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. *Dr. Meyer and Dr. Uran's Opinions*

Edmonds argues that the ALJ erred in failing to address all of the medical opinions in the administrative record. Specifically, Edmonds argues that:

---

[8] *See* Administrative Record at 381-384 (January 12, 2012 appointment); 385-386 (January 26, 2012 appointment); 387-388 (February 23, 2012 appointment). The record also contains two additional records from Hillyer on March 6, 2012 and March 16, 2012, dates after she filled out the "Medical Source Statement" on February 24, 2012. *See id.* at 389-393.

[9] *See* Administrative Record at 379-380 (February 3, 2012 appointment lasting 15 minutes).

> The Administrative Record . . . includes an evaluation and
> functional limitations from Dr. Martin Meyer [and Dr. Julie
> Uran]. Although required to evaluate all medical opinions in
> the record, the ALJ failed to acknowledge or evaluate
> Dr. Meyer's [and Dr. Uran's] opinions.

Edmonds' Brief (docket number 12) at 16. Edmonds concludes that this matter should be remanded for further consideration of Dr. Meyer's and Dr. Uran's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

In his decision, the ALJ failed to address the opinions of Drs. Meyer and Uran. In fact, there is no mention at all of Dr. Meyer's and Dr. Uran's opinions in the ALJ's decision, even though Drs. Meyer and Uran performed a psychological evaluation in October 2010. In their evaluation, Drs. Meyer and Uran determined that Edmonds had the following functional limitations: poor coping skills, overwhelming depression,

overwhelming anxiety, poor social skills, difficulty sustaining focus, and recurrent suicide attempts. Drs. Meyer and Uran opined that Edmonds' "current mental status is rated as poor, with poor prognosis for higher levels of personality integration."[10] Drs. Meyer and Uran concluded that:

> Within a vocational environment, [Edmonds] would have difficulty involving interacting with others as well as sustaining focus and motivation. Additionally, there is evidence of overwhelming depression and anxiety as well as lability in mood.

(Administrative Record at 301.) Consistent with Dr. Meyer's and Dr. Uran's opinions and observations, are the observations and treatment notes of Dr. Humberto Dorta, M.D., a treating source, who like Drs. Meyer and Uran is not mentioned in the ALJ's decision. From September 2010 through October 2011, Dr. Dorta met with Edmonds 10 times, concerning Edmonds' fluctuating difficulties with depression, anxiety, irritability, hallucinations, and anger management.[11] Because Dr. Meyer's and Dr. Uran's opinions are not as extreme and severe as Taylor-Hillyer's and Dr. Safdar's opinions, and are consistent with the opinions of Dr. Dorta, whose opinions were also not addressed by the ALJ, the Court believes that it was error for the ALJ not to address and consider their opinions. Furthermore, the Court finds that the ALJ failed to fully and fairly develop the record with regard to the opinions of Drs. Meyer and Uran and Dr. Dorta. *See Cox*, 495 F.3d at 618. Therefore, on remand, the ALJ must fully consider and address the opinions of Drs. Meyer and Uran when determining Edmonds' RFC and ultimate disability determination. The ALJ should also address the opinions of Dr. Dorta in order that the record is fully and fairly developed.

---

[10] Administrative Record at 301.

[11] *See* Administrative Record at 395-407.

### 3.  Consultative Examination

Edmonds argues that the ALJ failed to fully and fairly develop the record by not ordering a consultative psychological evaluation.  In support of his argument, Edmonds asserts that at the administrative hearing, the ALJ noted a *need* for a consultative examination.  Specifically, Edmonds points out that at three separate times during the administrative hearing, the ALJ indicated that a consultative examination was necessary. First, during an exchange between the ALJ and Edmonds' attorney discussing the opinions of Dr. Safdar, the ALJ twice stated "I'm inclined to have the claimant seen for a consultative psychological exam" and "I just think that I would like to have him seen in a consultative examination."[12]  Later, the ALJ stated "I will likely set him for . . . a consultative examination[.]"[13]  Finally, in closing the hearing, the ALJ stated "I'm going to see about scheduling you for a consultative examination[.]"[14]  Under the circumstances, Edmonds concludes that this matter should be remanded to allow the ALJ to order a consultative psychological examination for Edmonds.

An ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled.  *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 416.919a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources.").  20 C.F.R. § 416.919a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient

---

[12] *Id.* at 65-66.

[13] *Id.* at 68.

[14] *Id.* at 75.

to support a decision on . . . [the] claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 416.919a(b)(1).

Clearly, at the time of the administrative hearing, the ALJ believed that a consultative examination was appropriate based on the record in this case. Moreover, there is evidence in the record, both from treating and examining sources, that was not addressed by the ALJ in his decision, and is relevant to a determination of disability. There is also evidence in the record from treating sources that shares some consistencies with the evidence that has not been addressed, but appears to be more severe or extreme than the unaddressed evidence. Under such circumstances, and because the medical evidence as a whole, does not overwhelmingly support a finding that Edmonds is either disabled or not disabled, the Court believes that a consultative exam would be helpful for determining whether Edmonds is disabled. *See* 20 C.F.R. § 416.919a(b); *Barrett*, 38 F.3d at 1023. Therefore, the Court finds that the ALJ should order a new consultative examination of Edmonds as to his mental impairments, including an opinion on his functional abilities as they relate to his mental impairments.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record, including consideration of the opinions of Drs. Meyer and Uran and Dr. Dorta.

## *V. CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Edmonds' medical history. Specifically, the ALJ must address the opinions of Drs. Meyer and Uran, and provide clear reasons for accepting or rejecting their opinions. The ALJ should also address the opinions of Dr. Dorta, a treating source. Finally, the ALJ shall also order a new consultative examination of Edmonds regarding his mental impairments, including his functional abilities.

## *VI. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ___8th___ day of September, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

22